**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ABBOTT LABORATORIES, ET AL. PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION** | **MDL No. 3026** |
| | **Master Docket No. 22 C 71** |
| **This Document Relates to:** | |
| **R.J.,** ***a minor*****,** ***by his next of friend, Rebecca Donaldson*****,** ***and*** **Rebecca Donaldson,** ***individually*****,** | |
| **Plaintiffs,** | |
| **v.** | **No. 22 C 02011** |
| **MEAD JOHNSON & COMPANY, LLC, ET AL.,** | **Judge Rebecca R. Pallmeyer** |
| **Defendants.** | |

**MEMORANDUM OPINION AND ORDER**

In dozens of cases, parents of premature infants have alleged that infant formula manufactured by Defendant Manufacturers—Abbott Laboratories and Abbott Laboratories, Inc. (collectively, "Abbott") and Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, "Mead Johnson")—caused premature infants to develop necrotizing enterocolitis ("NEC"). The Judicial Panel on Multidistrict Litigation ("JPML") has consolidated a number of these cases for pretrial proceedings before this court. In this opinion, the court addresses Mead Johnson's motion to dismiss the Amended Complaint filed by Plaintiff Rebecca Donaldson and Donaldson's minor child, R.J. Mead Johnson argues that the Western District of Missouri, where Plaintiffs initially filed this suit, may not exercise personal jurisdiction over Defendants and is an improper venue because the alleged injuries occurred in Kansas. For the reasons discussed below, the complaint is dismissed without prejudice to the filing of an amended complaint in an appropriate jurisdiction. The parties are directed to submit briefs to the court within 21 days advising what next steps are appropriate.

## **BACKGROUND**

Plaintiff Rebecca Donaldson is one of many parents of premature infants who have alleged that their babies developed NEC as a result of consuming infant formula and fortifier products manufactured by Mead Johnson. Plaintiff brings this case individually and as next friend to her son, R.J. (Pls.' First Amended Compl. ("Am. Compl.") [14] ¶ 2.) According to the Amended Complaint, on February 27, 2010, R.J. was born prematurely, at 31 weeks gestational age. (*Id.* ¶ 34.) R.J. was born at Overland Hospital in Overland Park, Kansas, ten miles from the Donaldsons' home in Missouri. (*See id.*) At the Kansas hospital, R.J. was fed Mead Johnson's Enfamil Premature Infant Formula 24 Calories with Iron. (*Id.* ¶ 35.) On or about March 5, 2010, while still being fed Defendants' formula, R.J. began to develop NEC symptoms. (*Id.* ¶ 36.) Then, once the NEC diagnosis was confirmed, he was taken off formula feedings, given antibiotics and, on March 7, 2010, transported to the University of Kansas Medical Center for surgery, blood transfusions, and intubation. (*Id.* ¶ 37.) The following day, on March 8, 2010, R.J. underwent an exploratory laparotomy in which large sections of his bowels, found to be completely necrotic, were removed. (*Id.*) R.J. continued to receive NEC treatment in the weeks to come, including a second exploratory laparotomy on April 15 (*id.* ¶ 38) and a third iteration of the procedure on May 10, 2010. (*Id.* ¶ 39). On June 12, 2010—121 days after his birth—R.J. was released from the hospital, and, for the first time, returned to his family's home in Missouri, a 15-minute drive away from the University of Kansas Medical Center. (*Id.* ¶ 40.) R.J. has continued to reside in Missouri and has received follow-up treatment for his health conditions, some of them quite severe, in Missouri. (*Id.* ¶ 41.)

On March 4, 2022, Plaintiffs filed this suit against Mead Johnson in the United States District Court for the Western District of Missouri, invoking diversity jurisdiction.[1] (Compl. [1] at

[1] Plaintiffs are citizens and residents of Missouri. (Am. Compl. ¶¶ 7, 8.) Defendant Mead Johnson Nutrition Company is a Delaware corporation with its principal place of business in Illinois and/or Indiana (*id.* ¶ 9), and Mead Johnson & Company, LLC is a limited liability

p. 2.) On January 31, 2023, Mead Johnson moved to dismiss Plaintiffs' complaint under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a); Mead Johnson contends that the Western District of Missouri lacks personal jurisdiction over Mead Johnson for purposes of Plaintiffs' claims, and that the Western District of Missouri is an improper venue. In the alternative, Mead Johnson moved for transfer of venue to the District of Kansas pursuant to 28 U.S.C. § 1406(a). Mead Johnson further moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs' claims are time-barred and argued that Kansas law recognizes only one product liability claim, not the three Plaintiffs had alleged. (*See generally* Defs.' Mem. in Supp. of Mot. to Dismiss [11].) In response, on February 28, 2023, Plaintiffs filed an Amended Complaint [14], alleging various additional connections between Mead Johnson and the State of Missouri, as well as between Plaintiffs and Missouri. The Amended Complaint lodges three claims: Strict Liability – Design Defect (Count I); Strict Liability – Failure to Warn (Count II); and Negligence (Count III).

Mead Johnson has again moved to dismiss [16], raising the same arguments asserted in its earlier motion: Mead Johnson contends the case should be dismissed for lack of personal jurisdiction and improper venue because the alleged injury occurred in Kansas. (Defs.' Mem. in Supp. of Mot. to Dismiss Pls.' First Am. Compl. ("Defs.' Br.") [17] at 7–11.) Alternatively, should the court decline to dismiss the action on those grounds, Mead Johnson argues that the case should be remanded and transferred to the District of Kansas (*id.* at 12–13) or dismissed as time barred under Kansas law (*id.* at 13–19). As another alternative, Defendants ask the court to strike and dismiss Plaintiffs' three product liability counts because Kansas law recognizes only one such claim. (*Id.* at 20.)

On June 27, 2023, the U.S. Supreme Court decided *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. ___, 143 S.Ct. 2028 (2023), upholding, against a due process challenge, a Pennsylvania

company organized under the laws of the State of Delaware whose citizenship is coextensive with that of its sole member: Mead Johnson Nutrition Company (*id.*).

law requirement that, to do business in the state, out-of-state corporations must consent to personal jurisdiction in Pennsylvania courts. Three days later, Mead Johnson filed a notice of supplemental authority regarding the *Mallory* case, but urged that its holding does not alter the result the court should reach here. On July 10, 2023, Plaintiffs responded by arguing that *Mallory* is in fact outcome-determinative with respect to the personal jurisdiction issue in this case.

For the reasons set forth here, the court dismisses Plaintiffs' complaint, but not the suit itself, and is inclined to allow the filing of a Second Amended Complaint, but seeks the parties' guidance as to the procedural mechanism appropriate in this case.

## DISCUSSION

The court first considers the issues of personal jurisdiction and improper venue. The court applies Seventh Circuit law to resolve these issues. *See In re Abbott Lab'ys Preterm Infant Nutrition Prods. Liab. Litig*, No. 22 C 71, 2022 WL 3716277, at *3 (N.D. Ill. Aug. 29, 2022) ("Although the Seventh Circuit has not addressed the question of which law applies to federal issues in cases transferred through the MDL process . . . other circuits have recommended [] application of the transferee circuit's interpretation of federal law. Courts in this district have followed this approach, applying Seventh Circuit case law.") (citations omitted). In their responsive brief, Plaintiffs rely on Eighth Circuit law concerning federal issues. The court considers such cases to the extent they are persuasive.

### I. Personal Jurisdiction

Mead Johnson asks the court to dismiss claims against it for lack of personal jurisdiction. This court's jurisdiction over Mead Johnson is coextensive with the jurisdiction of the United States District Court for the Western District of Missouri, where Plaintiffs originally filed this case. *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379 (J.P.M.L. 2020) ("Following a transfer, the transferee judge has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer." (citation omitted)); *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 297 n.11 (3d Cir.

2004) ("[T]he transferee court can exercise personal jurisdiction to the same extent that the transferor court could.") (citations omitted). There are two types of personal jurisdiction, "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. 8th Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Mead Johnson argues that it is not subject to either in Missouri. The burden of proof on this issue rests with Plaintiffs. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014); *see also Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 902 (N.D. Ill. 2015) ("The party asserting personal jurisdiction bears the burden of proof.") (citing *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

The court begins (and ends) with the issue of general personal jurisdiction. Mead Johnson argues that it is not subject to general jurisdiction in Missouri because Missouri is not its state of incorporation nor the location of its principal place of business; both Mead Johnson entities are incorporated in Delaware and maintain their principal place of business in Indiana. (Def.'s Br. at 8 (citing *Goodyear*, 564 U.S. at 919 and *Daimler AG v. Bauman*, 572 U.S. 117, 137 (2014)).) Plaintiffs respond that Mead Johnson has consented to personal jurisdiction in the State of Missouri by choosing to register with the Missouri Secretary of State to do business in Missouri and by designating an agent for service of process there. (Pl.'s Opp. at 2 (citing *Mitchell v. Eli Lilly & Co.*, 159 F. Supp. 3d 967, 979 (E.D. Mo. 2016)).) If Plaintiffs are correct, the cases on which Mead Johnson relies—*Goodyear* and *Daimler*—are inapplicable, because those cases concern whether a court may exercise personal jurisdiction over a corporate defendant "that *has not consented* to suit in the forum." *Mallory*, 143 S.Ct. at 2039 (emphasis in original) (quoting *Goodyear*, 564 U.S. at 927–28).

The Supreme Court recently addressed the issue of whether due process is violated by allowing a state court to exercise jurisdiction over an out-of-state corporation that has consented to personal jurisdiction in order to do business there. In *Mallory v. Norfolk Southern Railway Co.*,

a Virginia resident sued in Pennsylvania a Virginia corporation that registered to do business in Pennsylvania, on an action that accrued in Ohio. *See id.* at 2032. The defendant railroad company had filed paperwork consenting to appear in Pennsylvania courts as a condition for registering to do business in the Commonwealth. *Id.*; 42 Pa. Cons. Stat § 5301(a)(2)(i), (b) (2019).

A five-justice majority concluded that *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917) controlled the case before it. *Mallory*, 143 S.Ct. at 2037. In *Pennsylvania Fire*, a unanimous court held that an out-of-state plaintiff could sue a Pennsylvania corporation in Missouri because the defendant corporation had agreed to accept service of process in Missouri on any suit as a condition of doing business there. *Id.* at 2036 (citing *Pennsylvania Fire*, 243 U.S. at 95). The *Mallory* Court expressly upheld *Pennsylvania Fire*, a case which concerned Missouri's foreign corporation laws. Even so, the *Mallory* Court, focusing on Pennsylvania law, did not speak to whether its holding extended to Missouri's present-day statutory scheme; rather, the Court stated that it "need not speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit." *Id.* at 2038.

The question for this court, then, is whether the Missouri laws at issue in this case mirror the Pennsylvania statutes at play in *Mallory*. The court concludes that they do. Mead Johnson has registered to do business in Missouri pursuant to Mo. Ann. Stat. § 351.571, which requires foreign corporations to obtain a "certificate of authority" from the secretary of state before transacting business within the state. This "certificate of authority" bestows on a foreign corporation "the same but no greater rights" and "the same but no greater privileges" and subjects the foreign corporation to "the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character." Mo. Ann. Stat. § 351.582. Under Missouri law, registered foreign corporations are treated like domestic corporations and can, accordingly, be haled into court there. Like Pennsylvania, Missouri requires registered foreign corporations like Mead Johnson to consent to suit in its courts.

Mead Johnson urges that the statutory schemes diverge and *Mallory* does not apply. (Def.'s Notice of Supp. Authority [24] at 1.) For support, Mead Johnson cites *State ex rel. Norfolk S. Ry. Co. v Dolan*, 512 S.W.3d 41, 52 (Mo. 2017) (*en banc*), in which the Supreme Court of Missouri held that a foreign corporation does not consent to general personal jurisdiction in Missouri when it complies with Missouri's foreign business registration statutes by registering with the state and designating an agent to receive service of process. *Id.* at 52–53; Mo. Ann. Stat. §§ 351.594(1). The *Dolan* court announced that prior cases holding otherwise—including *Pennsylvania Fire*—"should no longer be followed." *Dolan*, 512 S.W.3d at 53 n.11. *Mallory*, which expressly upholds *Pennsylvania Fire*, casts doubt on *Dolan.* The court agrees with Plaintiffs that "*Mallory* challenges the very foundation of *Dolan*" (Pl.'s Resp. to Notice of Supp. Authority [25] at 2), and that *Mallory* controls here.

Because general jurisdiction allows a state court to adjudicate "'any and all claims' brought against a defendant," *Ford Motor*, 141 S.Ct. at 1024, the court need not address the parties' arguments concerning specific jurisdiction, which allows a state court to hear suits that "'arise out of or relate to'" a corporate defendant's activities in the forum state, *id.* at 1024–25.

**II. Venue**

Mead Johnson additionally moves to dismiss this case under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a), arguing that Plaintiffs originally filed this suit in an improper venue: the Western District of Missouri. The question of proper venue is governed by 28 U.S.C. § 1391(b), which instructs that venue is proper in a judicial district (1) where the defendant resides, or (2) where a substantial part of the events giving rise to the claim occurred. The question is not whether a plaintiff filed suit in the "best" venue, but rather whether the plaintiff's chosen district has a substantial connection to the claim.[2] *See In re IKO Roofing Shingle Prod.*

[2] Plaintiffs' Eighth Circuit authority also supports this principle. *See Caricato v. Nissan N. Am., Inc.*, No. 4:20-CV-01007-NKL, 2021 WL 5044867, at *1 (W.D. Mo. June 1, 2021) (citing *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003)).

*Liab. Litig.*, 757 F.3d 599, 601 (7th Cir. 2014) (noting that 28 U.S.C. § 1391 "gives plaintiffs a right to proceed in their chosen forum").

The court agrees with Defendants: Mead Johnson does not reside in Missouri and the events giving rise to Plaintiffs' claim occurred in Kansas; Kansas is the appropriate venue. Plaintiffs argue that venue is nevertheless also proper in the Western District of Missouri because Mead Johnson "maintained dominance of the infant formula market in the State of Missouri" (Pls.' Resp. at 13), and because R.J. continues to suffer injuries from NEC and receive resulting medical treatment in Missouri. (Am. Compl. ¶ 7.) True as those assertions may be, they do not show that a substantial part of the events giving rise to Plaintiffs' claim occurred in Missouri: R.J. was born in Kansas, was fed Mead Johnson's allegedly injurious product in Kansas, and was diagnosed with NEC in Kansas. No amount of additional discovery will change those core facts. Venue of this case lies in Kansas, not Missouri.

## III. Next Procedural Steps

The venue issue in this case arises in an unusual posture. The pre-trial motions are proceeding in neither Missouri nor Kansas, but rather before this MDL court in the Northern District of Illinois. Were this a typical case, this court could cure the improper-venue defect by transferring the case to another district under 28 U.S.C. § 1404(a) or § 1406(a). *See North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023); *Ultrasonic Power Corp. v. Cleaning Techs. Grp.*, LLC, No. 17 C 50308, 2018 WL 11197101, at *5 (N.D. Ill. June 19, 2018). But an MDL court's remand and transfer powers are governed by 28 U.S.C. § 1407, which does not explicitly discuss the issue of improper venue. Under § 1407(a), an MDL court cannot transfer a case on its own. *See In re Camp Lejeune N. Carolina Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1334 (N.D. Ga. 2016) ("[A]n MDL transferee court cannot order a transfer of a case from the MDL back to itself or to any other district court directly."). Section 1407 instead presents an MDL court with only two options: either terminate the case prior to trial or return the case to the JPML with a suggestion of remand—a step ordinarily taken when the case is ready for trial. 28 U.S.C. § 1407(a) ("Each

action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated[.]").

One possible result would be for this court to return the case to the JPML with a suggestion of remand to the transferor court, and the expectation that it would then be transferred to the appropriate forum (this court would have no power to mandate such an action on the part of another district court). *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 41 n.4 (1998); *see also In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100, 1123 (S.D. Fla. 2016) (concluding that § 1407(a), as interpreted by the Supreme Court in *Lexecon,* precludes an MDL court from ordering a transfer under either §§ 1406(a) or 1631 to cure a jurisdictional defect). An alternative resolution would be for the court to simply dismiss this case without prejudice to re-filing in Kansas; but such a result might prejudice Plaintiffs, should a court addressing the question determine that Plaintiffs' case was timely filed in Missouri, but the statute of limitations was not tolled during the pendency of the case and the time for filing had expired. In any case, should the case make its way to Kansas—either by way of transfer or by way of a re-filing—the case would likely again be identified as a tag-along case and be transferred back to the MDL. A third alternative—again, potentially depending on timeliness/tolling issues—would be to allow for direct filing of this case into this MDL, a route not available to Plaintiffs when the case was filed, but authorized now by this court's Case Management Order No. 11 ([296] in Case No. 22 C 71 (Jan. 6, 2023)).

As the circumstances appear to be novel, the court seeks further guidance from the parties. Plaintiffs' counsel, together with Lead Counsel, are directed to confer with counsel for Mead Johnson. Absent agreement concerning the appropriate approach, the parties are directed to file simultaneous briefs, on or before August 27, 2023, addressing the questions of what procedure is supported by law and what procedure is preferable to them.

## CONCLUSION

Mead Johnson's motion to dismiss [16] is denied without prejudice. Its earlier motion to dismiss [10] and motion for leave to file an oversize brief [9] are stricken as moot. The parties are directed to file a joint stipulation or simultaneous briefs addressing appropriate next steps, on or before August 27, 2023.

ENTER:

Dated: August 3, 2023

REBECCA R. PALLMEYER
United States District Judge